IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | | |
|---|---|---|---|
| MALAY VORACHIT | | : | |
| | Plaintiff | : | CIVIL ACTION |
| | | : | |
| vs. | | : | |
| | | : | NO.  06-CV-3976 |
| MICHAEL J. ASTRUE | | : | |
| | | : | |
| | Defendant | : | |

**MEMORANDUM OPINION & ORDER**

GOLDEN, J.                                                    AUGUST 21, 2007

Before the Court are plaintiff's objections to Magistrate Judge Peter B. Scuderi's Report
& Recommendation ("R&R") denying plaintiff's request for review and affirming the defendant
Social Security Commissioner's denial of supplemental security income (SSI) to plaintiff.
Because the hypothetical questions posed to the Vocational Expert during the administrative
hearing did not include all pertinent limitations, plaintiff's objections to the R&R are sustained in
part.  The case is remanded to the Commissioner for further proceedings consistent with this
opinion.

PROCEDURAL HISTORY

Plaintiff made her third application for SSI on April 27, 2005, claiming that she has been
disabled since 1997 due to hypertension, vascular disease, depression, arthritis, and post
traumatic stress disorder (PTSD).  (Tr. 37, 11).  The Social Security Administration denied
plaintiff's claim in August 2005, and plaintiff requested and received a hearing in front of an
administrative law judge (ALJ), conducted on March 27, 2006.  (Tr. 11).

The ALJ issued his decision on June 6, 2006.  The ALJ found that plaintiff had severe
impairments including asthma, hypertension, and arthritis in both knees, but that she was not

disabled under Section 1614(a)(3)(A) of the Social Security Act.  (Tr. 11-18).  Following an

unsuccessful appeal to the Social Security Appeals Council, plaintiff filed the instant action in

this Court.

STANDARD OF REVIEW

In reviewing the decision of an ALJ, this Court must determine whether the decision was

supported by substantial evidence.  *See* 42 U.S.C. § 405(g).  Substantial evidence means such

evidence that a reasonable mind might accept as adequate to support a decision.  *See, e.g.,*

*Richardson v. Perales*, 402 U.S. 389, 407 (1971); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d

Cir. 1992).  The ALJ must consider all relevant evidence in the record and provide some

accounting of what evidence he rejected and why he rejected it.  *See, e.g., Adorno v. Shalala*, 40

F.3d 43, 48 (3d Cir. 1994).  In determining whether the ALJ's decision was supported by

substantial evidence, the Court may look at all evidence in the record, regardless of whether the

ALJ cites to it in his decision.  *See Richardson*, 402 U.S. at 401.  In addition, the Court reviews

*de novo* the objections that the plaintiff raises to the Magistrate Judge's R&R.  28 U.S.C. §

636(b)(1)(C).

Under the Social Security Act, a claimant is disabled if he or she is unable to engage in

"any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to...last for a continuous period of not less than twelve (12)

months."  42 U.S.C. § 423(d)(1)(A).  To determine if an individual is eligible for SSI, the

Commissioner must undertake a five-step, sequential analysis to determine whether the claimant:

(1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an

impairment that meets or equals the requirements of a listed impairment; (4) has an impairment

that prevents him from returning to his past relevant work; and (5) whether he can perform any other work in the national economy.  20 C.F.R. § 404.1520 (2003); *Sykes v. Apfel*, 228 F.3d 259, 262-63 (3d Cir. 2000).  The claimant bears the burden of proof as to first, second, and fourth prongs of this analysis, while the government bears the burden as to the fifth prong.  *Id.*  When evaluating a claimant's mental impairment, an ALJ must rate the claimant's limitations in four broad areas of functioning: daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation.  20 C.F.R. § 404.1520(a)(c) and § 416.920(a)(c).

To satisfy its burden as to whether the claimant can perform any other work in the national economy, the government often uses testimony from vocational experts, and must use such testimony when a claimant has both exertional and nonexertional impairments.  *See, e.g., Sykes*, 228 F.3d at 273.  An ALJ is required to include all credibly established limitations in a hypothetical question posed to a vocational expert.  *Rutherford v. Barnhart,* 399 F.3d 546, 554 (3d Cir. 2005).  Limitations are credibly established when they are medically determinable.  *Id.*

A minimal impairment is still an impairment, and must therefore be included in any hypothetical question directed to a vocational expert.  *See Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987).  Even moderate and mild impairments warrant inclusion.  *See Barry v. Barnhart*, 2006 WL 2818433, at *10 (E.D. Pa. Sept. 28, 2006); *Thompson v. Barnhart*, 2006 WL 709795, at *14-15 (E.D. Pa. Mar. 15, 2006); *McNatt v. Barnhart*, 2006 WL 3422686, at *11 (D. Del. Nov. 28, 2006) (Jordan, J.)  When a hypothetical question does not include all impairments, the court cannot be satisfied that the ALJ based his decision on substantial evidence.  *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002).

FACTS

Plaintiff was 42 years old at the time of her application.  (Tr. 17).  She is a naturalized

American citizen, born in Thailand and fluent in Laotian.  (Tr. 34, 15, 46).  Having little formal

education, she is neither fluent nor literate in English.  (Tr. 16).  She has no past work history.

(Tr. 16)  During her hearing, plaintiff testified that a combination of asthma, high blood pressure,

and arthritis frequently leave her weak, faint and in pain.  (Tr. 16).  She alleges difficulty in

walking, standing, and sitting for long periods of time, and claims that although she is able to lift

and reach, she experiences pain.  (Tr. 59, 143, 16).  Plaintiff's application for SSI included

claims of depression and posttraumatic stress disorder.  Plaintiff has never sought treatment for

these mental impairments, but a state agency psychologist assessed her as having both conditions

to a degree that is not severe.  (Tr. 46, 14, 112, 114).

MEDICAL EVIDENCE

Four providers contributed to the medical record in this case: Vathana Bunya, M.D.; Raul

Yankelevich, M.D., Mary Ryczak, M.D; and John D. Chiampi, Ph.D.  Their findings are

summarize below.

**Dr. Bunya**

Dr. Bunya, plaintiff's treating physician for several years, completed a medical source

statement on plaintiff's behalf.  (Tr. 80).  Dr. Bunya opines that plaintiff can life a maximum of

four pounds occasionally and three pounds frequently.  (Tr. 80).  Dr. Bunya also opined that

plaintiff can stand or walk for two hours total in a day and sit for six hours a day, and is able to

stand or walk for one-half hour at a time and sit for two hours at a time.  (Tr. 80).

**Dr. Yankelevich**

Dr. Yankelevich performed a consultative exam on July 25, 2005.  He tested plaintiff's

blood pressure and found it to be in the mild to moderate hypertensive range.  (Tr. 97).  Other

than a finding of hyperthesia from plaintiff's left leg down to her toes when pricked with a pin,

Dr. Yankelevich did not report any abnormal findings during his exam.  (Tr. 98).  Dr.

Yankelevich found no evidence of muscular atrophy, swelling, tenderness, redness, or joint

deformity.  (Tr. 98).  He found a full range of motion in plaintiff's extremities, back and spine.

(Tr. 98).

**Dr. Ryczak**

Dr. Ryczak, a state agency physician, performed the residual functional capacity

assessment of plaintiff.  She concluded that plaintiff could lift fifty pounds occasionally and

twenty five pounds frequently, that plaintiff could sit, stand, and walk for about six hours per

day, and that plaintiff had unlimited ability to push and pull.  (Tr. 101).

**Dr. Chiampi**

Dr. Chiampi, a state agency psychologist, completed a Psychiatric Review Technique

Form.  (Tr. 112, 114).  He assessed mild restrictions in daily living, mild difficulties in

maintaining social functioning, mild difficulties in maintaining concentration, persistence, or

pace, and no episodes of decompensation of extended duration.  (Tr. 119).  He concluded that

although plaintiff had PTSD and depression, her impairments were not severe.  (Tr. 109, 112,

114).  Finally, the psychologist concluded that the medical record contained no evidence of "Part

C" criteria under Listings 12.04 and 12.06.  (Tr. 120).

<u>PLAINTIFF'S OBJECTIONS TO THE R&R</u>

<u>1.  The ALJ erred by rejecting the opinions of Plaintiff's treating physician without good reason or adequate explanation.</u>

In her brief requesting review of the Commissioner's decision and in her objections to the R&R, plaintiff argues that the ALJ did not provide an adequate reason for rejecting the opinions of her treating physician, Vathana Bunya, M.D.  More precisely, the ALJ did not give Dr. Bunya's opinion controlling weight.[1]  (Tr. 14).  Dr. Bunya concluded that plaintiff was incapable of performing even sedentary work.  (Tr. 14)  The ALJ wrote that he did not give Dr. Bunya's medical source statement controlling weight because it was offered on a form "void of any rationale except for the diagnosis of asthma."  (Tr. 14).  The ALJ's statement is literally true–the only diagnostic detail provided in the report is the single word "asthma."

Plaintiff argued in her brief requesting review that, even if Dr. Bunya's opinion was not entitled to controlling weight, it "may still be entitled to deference and be adopted by the adjudicator."  (Pl.'s Br. at 3) (citing Social Security Ruling 96-2p).  Plaintiff also concedes, however, that there are four criteria that a medical opinion must meet in order to receive controlling weight: it must be from a treating source; it must be a medical opinion about the nature and severity of an impairment or impairments; it must be well-supported by medically acceptable diagnostic techniques; and it must not be inconsistent with other substantial evidence of record.  (Objections at 2) (citing 20 C.F.R. § 416.927(d)(2) and Social Security Ruling 96-2p).

---

[1]  Plaintiff argues that the ALJ "does not explicitly reject the opinions, nor does he weigh them against conflicting evidence."  (Objections at 2).  The Court does not agree.  Although the ALJ does not explicitly reject Dr. Bunya's opinion, he clearly weighed the evidence presented in Dr. Bunya's files alongside the evidence submitted by Dr. Yankelevich.  The opinions of the doctors are juxtaposed.

Plaintiff further concedes that the ALJ and the Magistrate Judge appear to focus on the third

factor, and to find Dr. Bunya's statement deficient because it is not well-supported by medically

acceptable diagnostic techniques.  Case law supports the proposition that an ALJ "may afford a

treating physician's opinion more or less weight depending upon the extent to which supporting

explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (internal

citations omitted).

The ALJ and Magistrate Judge noted, correctly, that Dr. Bunya's opinion was not well-

supported by medical evidence in the record.  Dr. Bunya had concluded that plaintiff was

incapable of performing even sedentary work.  Upon review of the record and Dr. Bunya's

handwritten notes in her files, the ALJ concluded that although plaintiff complained persistently

of knee pain, and there were references to her diagnoses of asthma, hypertension, and

degenerative joint disease, her conditions appeared to be under control.  (Tr. 14).  Plaintiff's

conditions never required emergency treatment, and also did not require diagnostic procedures,

such as a pulmonary function test, associated with serious illness.  (Tr. 13).  The ALJ noted

plaintiff's asthma, even if severe, never required physician intervention or treatment with

steroids.  (Tr. 13).

Even assuming, *arguendo*, that under Social Security regulations the ALJ could have

adopted Dr. Bunya's opinion about plaintiff's capacity for work, the Court concludes that the

ALJ has provided an adequate explanation of why he did not adopt Dr. Bunya's opinion.  Dr.

Bunya's opinion was not corroborated by the doctor's own notes, or by plaintiff's overall record

of treatment, which indicated that her illnesses were controlled.  Moreover, Dr. Bunya's opinion

is in conflict with Dr. Yankelevich's conclusions about plaintiff's capacity.  Finally, as the ALJ

noted, Dr. Bunya's opinion is conclusory and offered on a "bare form" with no supporting or persuasive detail.[2]   Therefore, the Court concludes that the ALJ provided sufficient reason, supported by substantial evidence, for not granting Dr. Bunya's medical source statement controlling weight.[3]

     2.   <u>The ALJ erred by not providing an adequate explanation for his assessment of plaintiff's credibility.</u>

An ALJ must evaluate subjective symptoms using a two-step process: first, determining whether there is objective evidence of a medically determinable impairment that could reasonably be expected to produce the symptoms alleged; and second, an evaluating the intensity and persistence of the pain or symptoms and the extent to which it affects the individual's ability to work.  20 C.F.R. § 416.929(b).  To make this determination, an ALJ must look at the objective evidence of record, and listen to a claimant's subjective testimony.  S.S.R. 96-7p.  An ALJ can reject a claimaint's testimony if he does not find it credible.  *Schaudeck v. Commissioner*, 181 F.3d 429, 433 (3d Cir. 1999).

Plaintiff's primary objection is that, to justify his acceptance of the ALJ's assessment of her credibility, the Magistrate Judge mischaracterized the medical record as to her arthritis.  The

---

[2]  Plaintiff criticizes the R&R for transgressing the requirement that "[t]he grounds upon which an administrative order must be judged are those upon which the record discloses the action was based" by commenting that "an ALJ may afford a treating physicians's report no weight when it is based on Plaintiff's subjective complaints."  (Objections at 3) (internal citations omitted).  Plaintiff argues that, via this comment, the R&R impermissibly amplifies the ALJ's opinion by adding a new rationale for his decision.  Even assuming that the R&R did impermissibly introduce a new argument, the Court concludes that the ALJ's opinion explains adequately how he weighed Dr. Bunya's opinion.  Plaintiff's objection that the Magistrate Judge overstepped the boundaries of appropriate review is therefore irrelevant.

[3]  Plaintiff's argument that the ALJ committed legal error in rejecting Dr. Bunya's opinion regarding residual functional capacity because it is on an issue reserved to the Commissioner is duly noted but does not change the Court's analysis.  Whether Dr. Bunya's opinion touched on an issue reserved to the Commissioner was tangential to the ALJ's decision, and remains tangential to the resolution of the case.

Magistrate Judge asserted that the records of plaintiff's treating physician contain "no diagnosis, no medical history, and no treatment plan regarding Plaintiff's arthritis." (R&R 15). Thus, the Magistrate Judge concluded, the ALJ was justified in discounting the plaintiff's subjective allegations regarding the intensity and severity of her symptoms. (R&R 14).

Plaintiff counters with citations to the abbreviation "DJD," or degenerative joint disease, in her treating physicians notes, citations to her own complaints of pain and soreness, and directives from Dr. Bunya to take Naprosyn or Ibuprofen on ten occasions. (Objections at 8). The government notes that the R&R refers solely to plaintiff's claims of arthritis in her knees, which are not supported by evidence in the record. (Def's Response to Pl.'s Objections). Moreover, the government notes that Dr. Bunya's medical source statement listed only asthma as an impairment limiting plaintiff's ability to work, undercutting the import of the R&R's discussion of plaintiff's arthritis.

Even assuming, *arguendo*, that the R&R mischaracterizes the medical record, the Court concludes that the ALJ had and provided an adequate explanation for his assessment of plaintiff's credibility. The medical record does not include objective test results that would support plaintiff's subjective claims of disability from arthritis. Neither Dr. Bunya nor Dr. Yankelevich observed abnormalities in plaintiff's legs (Tr. 89-93, 98, 124-34). Dr. Yankelevich reported that plaintiff's range of motion in her arms was normal, and that she had good dexterity and mobility in her hands. (Tr. 98). Moreover, Dr. Yankelevich reported on the absence of the kinds of swelling or atrophy associated with an inability to lift. (Tr. 98).

Finally, a review of the hearing transcript shows that plaintiff's responses to inquiries were vague and inconsistent, as the ALJ contended. When asked how often she felt faint,

plaintiff first responded "pretty often...quite often." (Tr. 144).  Responding to a follow-up

question from the ALJ, she then answered that she felt faint every day.  (Tr. 144).  She testified

that she could stand for an hour, and later amended her answer to say that she could stand for a

half hour to an hour.  (Tr. 144, 148).  She reported that she could walk for two to three hours (Tr.

143), but later stated that due to her asthma, she could likely only walk one block without

stopping, which would take approximately half an hour. ( Tr. 149).  These are the inconsistencies

and vague answers to which the ALJ referred.

Finally, as the Magistrate Judge noted, the ALJ did take plaintiff's subjective complaints

into account in his decision.  The ALJ determined that plaintiff could perform light work, even as

one physician assessed her as able to perform medium work.  (R&R at 15).  This downward

adjustment of plaintiff's capacity illustrates that the ALJ did weigh plaintiff's subjective

assessment of her own health in reaching his decision.

3.  The ALJ violated his duty to develop the record with respect to plaintiff's mental

impairments.

Plaintiff argues that the ALJ had a duty to order a consultative exam to explore her

mental impairments further, because there is no evidence of these impairments from treating or

examining sources.  Plaintiff herself, however, did not mention her mental impairments a single

time during her hearing, even when asked broad questions about her health.  Plaintiff's counsel

did not ask questions about her mental health.  Plaintiff never sought treatment for mental

impairments, and her treating physician never noted any mental difficulties.  Plaintiff bears the

burden of proving that her mental impairments contribute to a disability.  20 C.F.R. § 416.912(a).

Although the ALJ is bound to develop the record, he need not search out all possible evidence on

plaintiff's behalf.  *Hess v. Sec. of Health, Educ. and Welfare*, 497 F.2d 837, 840 (3d Cir. 1974).

Plaintiff's objection would impermissibly shift the burden of proof from the plaintiff to the

government.

4.  The ALJ improperly relied on vocational expert testimony elicited by a hypothetical question

that did not include all pertinent limitations.

Plaintiff contends that the ALJ committed a legal error in relying on a vocational expert's

response to a hypothetical question that did not take into account plaintiff's psychological

problems.  On this point, plaintiff's objections are sustained.

The ALJ asked two, multi-part hypothetical questions, quoted in full below:

> The vocational profile is a younger individual with a limited education and no
> prior relevant work, and she's obviously illiterate in English with an RFC for light work.
> In general would there be any jobs such an individual could do without the capacity to
> communicate in English?

> Now with regard to the DOT description of these jobs and the hypothetical
> presented, are there any significant variances?

> Now if we took the same vocational profile as it was presented today and all of
> it's aspects, would any jobs be maintainable?  (Tr. 151-52).

> One last one.  The same as the first, the same vocational profile, the same capacity
> for light work, but with a need to work in a clean atmosphere.  First of all would either of
> the two jobs you previously identified be appropriate?

> And once again, the DOT description of that job, is it all in variance with the
> hypothetical?  (Tr. 152).

In evaluating plaintiff's mental impairments, the ALJ relied on the assessment and

Psychiatric Review Technique Form prepared by a state agency psychologist, John D. Chiampi,

Ph.D.  The psychologist assessed depression and post-traumatic stress disorder.  (Tr. 112, 114).

He assessed mild restrictions in daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration. (Tr. 119). He concluded that plaintiff's impairments were not severe. (Tr. 119). Finally, the psychologist concluded that the medical record contained no evidence of "Part C" criteria under Listings 12.04 and 12.06. (Tr. 120).

The ALJ's report adopts the state psychologist's findings, at least implicitly. The Court reads the ALJ's statements that "I agree with the State agency psychologist and find any mental impairments are not severe" and "[a]fter my independent review of the medical evidence and listening to the claimant's testimony, I find nothing to warrant a contradictory conclusion" as implicit agreements with the psychologist's conclusions. (Tr. 14-15). In addition, the ALJ was required to include an assessment of plaintiff's mental health limitations in four areas of functioning somewhere in his report; because he attempts no independent analysis, the Court assumes he adopts the four-part assessment offered by the state agency psychologist. After reviewing the psychologist's report, the ALJ concluded that plaintiff has mild impairments "that would have no more than a minimal effect on her level of functioning and would place no more than minimal limitation on the claimant's ability to perform basic work activities." (Tr. 15).

The Court agrees with the R&R's assessment that, overall, plaintiff's mental impairments are poorly documented. Nonetheless, the Court concludes that mild mental impairments have been credibly established, because these impairments are "medically determinable." The assessment of the state agency psychologist, which the ALJ credited, specifically describes plaintiff's post-traumatic stress disorder and depression as "medically determinable impairment[s]." (Tr. at 114, 112). Thus, the mild impairments are credibly established, and the

ALJ's hypothetical questions were incomplete because they did not include any reference to plaintiff's mental limitations.

Because the ALJ's hypothetical questions to the vocational expert were incomplete, the plaintiff's objections to the R&R are sustained in part.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALAY VORACHIT | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | NO.  06-CV-3976 |
| MICHAEL J. ASTRUE | : | |
| | : | |
| Defendant | : | |

**ORDER & JUDGMENT**

AND NOW, this 21st day of August, 2007, it is hereby ORDERED that:

1.     Plaintiff's Objections to Magistrate Judge Scuderi's Report & Recommendation

(Document No. 11) are SUSTAINED in part;

2.     Plaintiff's request for review is GRANTED;

3.     The decision of the Commissioner is REVERSED;

4.     The case is remanded to the Commissioner in accordance with the fourth sentence

of 42 U.S.C. section 405(g) for further proceedings consistent with this opinion.

5.     JUDGMENT is entered in favor of plaintiff and against defendant, and the Clerk

of Court is directed to close this case for statistical purposes.

BY THE COURT:

/s/ Thomas M. Golden
THOMAS M. GOLDEN, J.